# COUNTY OF CHITTENDEN,

##### AT THE

## JANUARY TERM, 1869.

##### PRESENT :

HON. JAMES BARRETT,
HON. ASAHEL PECK,
HON. WILLIAM C. WILSON, } ASSISTANT JUDGES.
HON. JOHN PROUT,

---

### STATE OF VERMONT *v.* BENJAMIN D. PETERSON.

*Trial by Jury. Appeal. Jurisdiction. Recorder's Court. Burlington City Charter. Intoxicating Liquor. Criminal Law. Evidence.*

The charter of the city of Burlington is not unconstitutional for the reason that it makes no provision for the trial by jury of causes in the Recorder's court.

But its provisions which confer *final* jurisdiction of criminal offenses within the jurisdiction of a justice of the peace to try and determine, upon the Recorder's court, are unconstitutional and void.

The expression in article 10 of the bill of rights, "all prosecutions for criminal offenses," means all prosecutions for crimes and misdemeanors in the trial of which the "issue in fact" is proper for the cognizance of a jury.

State v. Peterson.

A complaint for being a manufacturer of intoxicating liquor is a prosecution in the trial of which the "issue in fact" is proper for the cognizance of a jury.

The framers of the constitution intended to secure to the accused, in all prosecutions for criminal offenses, the right of trial by jury, and the constitution does not allow final jurisdiction of a criminal offense, proper for the cognizance of a jury, to be conferred upon a court in which the right of trial by a common law jury is not secured and allowed to the accused.

The provisions of the constitution of 1793, and the course of legislation in this state before and since that time, leave no doubt that the people have regarded all criminal causes as proper for the cognizance of a jury.

The word jury, as used in the constitution, means a common law jury of twelve men.

The *dicta* in the cases, *State* v. *Conlin, in re, Dougherty*, and *State* v. *Freeman*, 27 Vt., in regard to conferring final jurisdiction in criminal causes upon a justice or police court to try and determine such causes without the intervention of a jury, disapproved.

On trial of a complaint for being a manufacturer of intoxicating liquor, it was *held* proper to inquire of a witness, in the employ of the respondent as teamster, to whom he had delivered the liquor manufactured by the respondent.

A question being put to a witness whether he had purchased strong beer of the respondent, this being the article which the testimony tended to show the respondent was manufacturing, the witness declining to reply on the ground that the answer would tend to criminate himself, the court properly held that it would not, and that he should answer the question.

*Held*, also, proper to ask a witness, who was a druggist, to whom some of the beer from the respondent's brewery was shown, what such beer was called.

But it was *held* improper to inquire of a witness, who had testified that strong beer was intoxicating, but that he did not judge from his own experience, "Is strong beer reputed to be intoxicating?"

COMPLAINT by the grand juror of the city of Burlington against the respondent for being a manufacturer of intoxicating liquor in said city. Plea, not guilty. Trial by the court.

The evidence on both sides showed that the respondent carried on a brewery in said city of Burlington, and that therein he was engaged in the manufacture of beer. The prosecution introduced evidence tending to show that the beer there manufactured was intoxicating, while the evidence on the part of the respondent tended to show the contrary.

Many witnesses were examined, both in behalf of the prosecution and defense; and a witness (William Davis) introduced on the part of the prosecution, testified that he was employed by the respondent as a teamster in connection with the brewery, and that his business was, in part, to carry away the beer made there. The prosecution inquired of the witness: "To what parties have you delivered this beer?" To this question the respondent objected, but the court overruled the objection, and the witness answered the question, stating "that he did not remember one place

where he delivered the beer, that a good deal of it goes across the lake." To the admission of this testimony the respondent excepted.

Another witness (Luman A. Drew) introduced by the prosecution, having testified that strong beer was intoxicating, but did not judge from his own experience, was inquired of by the prosecuting attorney: " Is strong beer reputed to be intoxicating?" To this question the respondent objected, but the court overruled the objection, and the witness testified that. it was. To the admission of this testimony the respondent excepted. In the course of his examination, by the prosecuting attorney,· this witness (Drew) stated that strong beer was made in the respondent's brewery. The counsel for the respondent then, and before the prosecuting attorney had finished his examination of the witness, interrupted the witness as he was testifying, and asked him if he was testifying from personal knowledge or from hearsay and rumor? The prosecuting attorney objected to the inquiry while he was examining the witness, and the court sustained the objection, remarking to the respondent's counsel that he would have the opportunity on his cross-examination of the witness. To which the respondent excepted.

The prosecution called a witness (Thos. D. Rhodes) who was sworn, and inquired of him if he ever purchased strong beer of the respondent. To this question the witness declined to reply, on the ground that the answer would tend to criminate himself. The court decided that the answer would not tend to criminate the witness, and that he considered the inquiry a proper one to make, and that it was proper he should answer the question. To this decision the respondent excepted.

The witness, under this direction of the court and because so directed, answered, that he did purchase one half barrel of strong beer of the respondent, about nine months ago, and it was delivered to him at the Rutland & Burlington depot in Burlington. To the admission of this testimony the respondent objected, but the court admitted it. To which the respondent excepted.

Edgar Burritt, a druggist, was introduced by the prosecution as a witness, and was shown a bottle of beer, taken in connection

with other bottles and casks of beer from the respondent's brewery, under a seizure made a few weeks previous to the commencement of this · prosecution, and was asked by the prosecuting. attorney what that liquid was. The witness replied, that it was some sort of sour hop beer, and that he did not know whether it was strong beer or small beer. The prosecution then inquired what such beer was called. To this question the respondent objected, but the court allowed the inquiry, to which the respondent excepted. The witness replied that some would call it beer, and some strong beer. To the admission of this answer the respondent objected, but the court admitted it. To which the respondent excepted.

The court, upon all the testimony, found the respondent guilty.

The respondent, thereupon, seasonably demanded an appeal from the judgment of the court to the county court for Chittenden county, and tendered to the recorder his fees, and due and sufficient security for such appeal, in accordance with the statute on that subject. But the court decided that no appeal lay to the county court, from this court, in police trials of a criminal nature, and therefore refused to allow the appeal. To which decision the respondent excepted.

Judgment was rendered August 2, 1867, DAVID READ, Recorder.

*Hard & Shaw*, for the respondent, maintained that the police court had no jurisdiction of this prosecution, because by the charter of the city of Burlington, by which that court was created, no provision is made for the trial of causes in that court by a jury of twelve men, and the judgment of the court in criminal cases, within the jurisdiction of a justice of the peace to try and determine, is expressly declared to be final. No appeal being allowed to the county court, the respondent was entirely precluded from having a trial by jury. The right to such a trial being secured by the constitution of the state, the charter of Burlington, in so far as it confers final jurisdiction in criminal causes upon the police court, is unconstitutional and void.

In the course of the argument in support of this proposition, the following authorities were cited: *Beers* v. *Beers*, 4 Conn.,

535; *Lincoln* v. *Smith et al.*, 27 Vt., 328; *Sullivan* v. *Adams*, 3 Gray, 476; *Plimpton* v. *Somerset*, 33 Vt., 283; *State* v. *Brennan's Liquors*, 25 Conn., 278; *Jones* v. *Robbins*, 8 Gray, 329; *Greene* v. *Briggs*, 1 Curtis's Cir. Ct., 311; *Steuart* v. *Baltimore*, 7 Md., 500; *Johnson's Case*, 1 Green. (Maine), 230; *Saco* v. *Wentworth*, 37 Maine, 165; *People* v. *Kennedy*, 2 Parker's Crim. Cases (N. Y.), 312; *People* v. *Carroll*, 3 *Ib.*, 22; *People v. Toynbee*, 13 N. Y., 378, 426, 456–458; *Warren* v. *Mayor of Charlestown*, 2 Gray, 84; *Fisher* v. *McGirr*, 1 Gray, 1; *State* v. *Wheeler*, 25 Conn., 290.

*Leverett B. Englesby*, state's attorney, for the state.

The opinion of the court was delivered by

WILSON, J. This was a complaint by the grand juror of the city of Burlington against the respondent for being a manufacturer of intoxicating liquor in that city, contrary to law. The case was tried before the recorder's court, upon plea of not guilty. Several exceptions were taken by the respondent to the rulings of the court admitting testimony against him, and exception was also taken to the decision of the recorder which denied the respondent an appeal from the judgment of that court to the county court. The charter by which the police court of that city was created made no provision for the trial of causes in that court by a jury of twelve men; it made the judgment of the court final in criminal causes within the jurisdiction of a justice to try and determine, and allowed no appeal to the county court. The main question is as to the constitutionality of these provisions of the charter. The respondent claims that the right to a trial by a jury of twelve men is secured to him by the constitution of the state, and that the charter, in so far as it confers final jurisdiction in criminal causes upon the recorder's court without the right to trial by jury or appeal, is unconstitutional and void. It appears that the charter was amended in 1867, by which amendment the right of appeal is given where the fine imposed exceeds $10, yet the question presented for adjudication is important to these parties, and perhaps otherwise important, especially as the principle in-

volved tests the constitutional power of the legislature to enact laws affecting the right of trial by jury in prosecutions for criminal offenses. The tenth article of the bill of rights provides " that in all prosecutions for criminal offenses, a person hath a right to be heard by himself and his counsel; to demand the cause and nature of his accusation; to be confronted with the witnesses; to call for evidence in his favor, and a speedy public trial by an impartial jury of the country, without the unanimous consent of which jury he can not be found guilty; nor can he be compelled to give evidence against himself; nor can any person be justly deprived of his liberty, except by the laws of the land, or the judgment of his peers." It is claimed by the government attorney that the provisions of that article have no reference to trials for minor offenses affecting the police of the state merely, and that the exclusive control and regulation of such offenses is, by the fifth article of the bill of rights, secured to the legislature of the state. The fifth article provides " that the people of this state, by their legal representatives, have the sole inherent and exclusive right of governing and regulating the internal police of the state." It is doubtless true that the offense charged against the respondent comes within the regulation of the police of the state, the control of which belongs to the legislature under such restrictions as are imposed by other provisions of the constitution. In England, almost from the commencement of her criminal jurisprudence, and in this country, ever since the foundation of the government, justices of the peace and police courts have, by acts of parliament or the state legislature, had and exercised jurisdiction in criminal causes in prosecutions for minor offenses, to try and determine them upon complaints of town grand jurors and other informing officers, without the intervention of a common law jury of twelve men. By several acts of parliament, a summary proceeding was instituted for the conviction of offenders for minor offenses and inflicting of certain penalties created by those acts. In these there is no intervention of a jury, but the party is acquitted or condemned by the suffrage of such person only as the statute had appointed for his judge. These summary convictions, though allowed before justices of the peace in some cases in

England, were not known to the common law, except in case of contempt. The courts of common law in England have thrown in some checks upon these summary convictions, and they have been regarded by eminent English judges as a departure from the principles insisted on by *magna charta* in respect to the mode of trial. Judge Blackstone, referring to some of the mischievous consequences growing out of summary proceedings in the administration of criminal law by a single magistrate, says: " and from these ill consequences we may collect the prudent foresight of our ancient lawgivers, who suffered neither the property nor the punishment of the subject to be determined by the opinion of any one or two men, and we may also observe the necessity of not deviating any further from our ancient constitution by ordaining new penalties to be inflicted upon summary convictions." In our own state, ever since the adoption of the constitution, certain minor offenses have been cognizable by a justice of the peace, to hear and determine such causes without the intervention of a jury of twelve men. It has been found that these inferior courts, when their proceedings are regulated and governed by laws which ultimately secure all constitutional rights, are indispensable to the interests of the subject or citizen, by doing him speedy justice and saving him from the expense and delay of prosecutions by indictment or information in cases where the accused does not desire or claim the benefit of a trial by jury. The practical construction of the bill of rights which has, by the general consent and acquiescence of the people and sanction of our courts ever since the adoption of the constitution, given to justice and police courts the power to try and determine prosecutions for minor offenses, is of great force, in view of which and of the principles on which it is founded, it is quite clear that the charter is not unconstitutional because it makes no provision for trial by jury. The more important inquiry is, whether the charter is unconstitutional in so far as it confers *final jurisdiction* in criminal causes upon the police court in which no constitutional provision has been made for trial by jury. In order to determine this question, some further consideration of the tenth article of the bill of rights, of other

constitutional provisions, and of the nature of the offense charged and its penalty, becomes necessary.

The expression in article 10, " *all prosecutions for criminal offenses,*" means all prosecutions for crimes or misdemeanors in the trial of which the " *issue in fact*" is proper for the cognizance of a jury. A crime or misdemeanor is an act committed or omitted in violation of a public law either forbidding or commanding it. 4 Black. Com., 4. This general definition comprehends both crimes and misdemeanors which, properly speaking, are mere synonymous terms, though in common usage the word " *crime*" is made to denote such offenses as are of a deeper and more atrocious dye, while small faults and omissions of less consequence are comprised under the gentler name of " misdemeanors" only. 4 Black. Com., 4. In the English law, *misdemeanor* is generally used in contradistinction to *felony*, and misdemeanors comprehend all indictable offenses which do not amount to felony. Section 2 of article 4 of the Constitution of the United States contains the expression, " *treason, felony or other crimes.*" In that expression the words " *or other crimes*" evidently mean a misdemeanor. Criminal offenses mean simply offenses. Crimes include all offenses, and offenses include all crimes, whether felonies or misdemeanors. A misdemeanor is an offense against the public, punishable by fine or imprisonment in a county jail, or both of said penalties, and in this respect is distinguishable from a felony or infamous crime, which subjects the perpetrator to the punishment of death or imprisonment in a state prison. Crime and misdemeanor in other respects are synonymous. It is said that the word " crime" has no technical meaning in the law of England, but when it has a reference to positive law it comprehends those acts which subject the offender to punishment. In positive laws those acts are denominated private injuries for which the law has provided only retribution or a compensation in damages, but when from experience it is discovered that this is not sufficient to restrain within moderate bounds certain classes of injuries, it then becomes necessary for the legislative power to raise them into crimes and to endeavor to repress them by the terror of punishment. It is clear that the legislature has power to enact all laws

essential to the protection of the lives, limbs, health, morals and comfort of the people and the protection of their property. By this legislative power an act, indifferent in and of itself except as it operates as an inducement to the commission of acts which directly or indirectly affect the lives, health, comfort and quiet of the people, may be raised to a crime and subject the perpetrator of it to severe penalty.

The manufacture of intoxicating liquor is the source of intemperance. Intemperance, the legitimate consequence of the use of intoxicating liquor as a drink, has been and is the source of innumerable evils to individuals and society, and productive of more wretchedness and crime than any other cause. This being so, the act of our legislature entitled an act " to prevent the traffic in intoxicating liquors for the purpose of drinking," prohibits the manufacture of such liquors and renders the violators of its provisions subject to public and severe punishment. The act provides that the manufacturer of intoxicating liquor shall, for the first offense, forfeit and pay the sum of one hundred dollars and costs of prosecution; for the second and every subsequent conviction, he shall pay two hundred dollars, and on being convicted thereof the third or any subsequent time, he shall be imprisoned in the county jail not less that four nor more than twelve months; that such forfeiture and payment is to be recovered and such penalty to be inflicted upon complaint, information or indictment. The act, in terms, makes the manufacture of intoxicating liquor an *offense*, an indictable offense.

Is the *issue in fact*, upon plea of not guilty, " proper for the cognizance of a jury?" This question must depend upon the nature of the offense, its forfeiture and penalty, and the object sought by the prosecution. Independent of the statutory prohibitions, the mere act of manufacturing intoxicating liquors, (if they are not used), incurs no guilt or wrong except that arising from the loss occasioned by the manufacture of an article not needed. The act of 1852 is properly entitled an act " to prevent the traffic in intoxicating liquors for the purpose of drinking." The mischief results from the use of such liquors as a drink. The chief objects, then, of the prohibition as to the manufacture, are to pre-

vent or remove inducements, temptations and opportunities for un-authorized traffic in such liquors, to prevent their unnecessary use, and thereby to protect the people in the enjoyment of their civil, political and religious rights. The judgment of the law-making power, as to the nature of the offense of manufacturing intoxicating liquors contrary to law, is sufficiently indicated by the forfeiture and penalty incurred. Judging, therefore, from the destructive consequences which too often result from the unrestrained manufacture of such liquors, and by the penalty annexed to the offense, it can upon no principle or pretence be called a' *petty offense*, even if in such the person accused could be deprived of a trial by a constitutional jury, which I deny. This prosecution is strictly a proceeding *in personam*, involving the truth of the accusation, and for the recovery of the forfeiture and infliction of the penalty. The leading question to be determined, viz., the guilt or innocence of the respondent, is fit and proper to be tried by a jury, according to the rules of the common law. The prosecution is proper for the cognizance of a jury, by reason of the sum forfeited upon conviction; it is also proper for the cognizance of a jury, because it involves the personal liberty of the respondent. The distinction between high crimes and those minor offenses, usually denominated misdemeanors, is important in respect to the degree of guilt and the penalties respectively incurred, in regulating the jurisdiction of courts in which prosecutions for criminal offenses may be commenced, and the form in which the different offenses may or shall be presented for trial, but it is not the criterion as to the fitness of the *issue* for the cognizance of a jury. Under article 5 of the bill of rights, all regulations of the internal police of the state must be created and authorized solely by the legislature, either by direct legislation or by delegated power given by the legislature to municipal corporations to pass ordinances and by-laws. The regulations for preliminary proceedings in all prosecutions for criminal offenses may be, in a certain sense, regarded as police regulations, yet the mere fact that prosecutions for minor offenses come more particularly within such regulations, does not determine whether the issue is proper

33

for the cognizance of a jury, nor whether the right to a trial by jury is secured by the constitution.

Holding this prosecution to be one "proper for the cognizance of a jury," we are led to inquire whether the right of a trial by jury is, by the constitution, guaranteed to the respondent?

It would seem that the words in the 10th article of the bill of rights, in respect to trial by jury, are broad enough to include the case at bar. But this right does not depend solely upon the provisions of that article. The provisions of article ten were embraced in the first constitution of this state, adopted July 2, 1777. The 13th article of the bill of rights in that constitution is, "that in controversies respecting property, and in suits between man and man, the parties have a right to trial by jury, which ought to be held sacred." The first ten articles in addition to, and amendment of the constitution of the United States, were proposed in 1789, and were finally ratified on the 15th day of December, 1791. While those amendments were pending before congress, the right of trial by jury was discussed thoroughly by the first jurists and statesmen of the land, both in and out of congress, in which the ablest jurists and legislators of our own state participated, producing in the minds of the people the conviction and judgment that trials by jury, in all cases "proper for the cognizance of a jury," should be made of universal application. Therefore, the present constitution of this state (article 12) which was adopted in 1793, provides "that when any issue in fact, proper for the cognizance of a jury, is joined in a court of law, the parties have a right to trial by jury, which ought to be held sacred." By the very language of this article, the right of trial by jury is made of universal application where the *issue* is proper for their cognizance. The right of trial by jury is made to depend upon the *fitness* of the issue for this mode of trial, and *not upon the question whether the parties can enjoy that right in the court which first takes cognizance of the issue.* Article 6, of the amendments to the constitution of the United States, provides that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury." This article, it is believed, has always been construed to

include prosecutions for every grade of offense where the proceedings are *in personam*. And although it has been held that the provisions of the constitution of the United States, so far as they relate to trial by jury, have no application to the legislative powers of state governments, we may infer that the framers of our state constitution intended its provisions should be in conformity to the federal constitution, in respect to trials by jury. Section 4, of our state constitution, provides that courts of justice shall be maintained in every county in the state. By this section of the constitution, relating to county and supreme courts, and by article 5 of the bill of rights, relating to the internal police of the state, it was and is made the duty and the right of the legislature to create such courts as the interests of the people and the proper administration of justice require. It is plain from the provisions of the constitution that its framers understood that justice, and police courts, with limited jurisdiction, as well as county and supreme courts of general jurisdiction, would be constituted and maintained; and ever since the foundation of the government, courts of limited as well as courts of general jurisdiction have existed for the trial of both civil and criminal causes. A justice of the peace is authorized to try and determine prosecutions for minor offenses within his jurisdiction; and empowered to cause to be apprehended and committed to prison, or bound over with sufficient sureties for trial by the county court, all persons charged with crime exceeding his jurisdiction to try. In some prosecutions for criminal offenses, the offense charged is in terms within the jurisdiction of a justice to try and determine; while in prosecutions for other criminal offenses the jurisdiction of the justice is to be determined on preliminary examination of the proofs as to the value of the property, or the nature and extent of the injury, or aggravation of the offense. When the justice shall have decided to take jurisdiction of the cause, the respondent is entitled to such mode of trial as the law provides for in a justice court; that is, by the justice or by a jury of six men. But however much the respondent may desire a trial before the justice by a common law jury of twelve men, he can have no such trial there, because the law makes no

provision for the trial of any cause before a justice court by a jury of more than six men. Since the first institution of justice courts their jurisdiction has been extended, both in civil and criminal causes ; yet in many of the disputable causes triable before that court, the matters and sum in demand and the rights involved are so small, or of such a nature, that neither the private interests of the parties, nor the due administration of public justice, have required, or would justify, a law subjecting the parties or the government to the expenses of a trial by a jury of twelve men, in a justice or police court, especially when, by giving the right of appeal to a court which tries cases by a common law jury, all constitutional rights can be secured to and enjoyed by the parties on the final trial of the issue. In the majority of the causes triable before justice and police courts, the parties could desire no other mode of trial there than is provided and secured to them by law ; and although the right of appeal has been almost universally preserved, it has been found that but few of the many causes tried before these inferior courts are carried into the county court. While all this is true as to very many matters within the jurisdiction of justice and police courts, it will not be forgotten that many matters within their jurisdiction involve important interests and rights, affecting property, reputation, and the liberties of the people. The importance of these interests and rights should not be diminished by the fact that original jurisdiction of them is given to inferior courts which do not try causes by jury, or in which the parties can have a trial by a jury of only six men. It is obvious I think that, neither the limitation as to the number of the jury in a justice court, nor the manner of selecting them, nor the place from which the law provides they shall be selected, would allow final jurisdiction in criminal causes to be conferred upon such court. It will be conceded that in order to command the acquiescence of the people in the verdict of a jury as well as the judgment of the court, effectual provision should be made to guard against every inlet to corruption, and against the admission of those to sit on the trial who may be subject to prejudices or interested views in their decisions. The law provides for no stated terms of court to be holden by a justice

of the peace. The prosecutor in criminal causes generally selects the justice before whom the accused must be tried. He is arrested and brought forthwith before the justice signing the warrant, and if he shall desire a trial by a jury of six men before the justice, he can have that mode of trial. But it will be seen that by section 44 of chapter 31 of the General Statutes, the selection of a jury in a justice court is, to a very great extent, committed to the judgment and discretion of the constable or other officer appointed to write the ballots and draw them from the box. If the accused has any knowledge of the inhabitants of the town or vicinity from which the jury are to be taken, he can have no knowledge in regard to the names written on the ballots in the box until they have been severally drawn ; and when a ballot is drawn, he must accept the person whose name is drawn or challenge him in ignorance of the remaining names from which the jury or the remainder of them must be taken. It is quite clear that under the existing provisions for selecting a jury in a justice court, the accused can have no such notice of the jury, and of their sufficiency or insufficiency, characters, connections and relations as would enable him to challenge them upon just cause. The officer, in selecting the jury for the trial of a cause before a justice, may have acted impartially, and the jury selected and empanelled may be impartial, yet the manner in which they are selected and the fact that they are taken from the vicinity in which it is alleged the offense was committed, and exposed as they may have been to the influence of the interested passions of the person or persons injured by the act complained of, create feelings of insecurity as to the protection of the rights of the accused, and sometimes a want of confidence in the verdict, which do not exist where the jury are selected, drawn and summoned from the body of the people and county, in the manner provided for selecting petit jurors to try causes in the county court. It is doubtless true that in view of the purposes for which these inferior courts were created, and the sum in demand in civil actions whereof final jurisdiction could be conferred, the manner of selecting the jury in a justice court is the best that could be devised without making trials in such courts generally more expensive than the interests

or rights involved or the importance of such trials would allow of. For it is plain from the provisions of the constitution and the several statutes securing the right of appeal from justice courts, that these inferior courts were created with provision for trial in them by the court, or by a jury of six men, with the understanding that all matters, in which either party, by the provisions of the constitution, could claim a trial by a full jury, could be taken to a court which tries causes by a jury of twelve men. The fourth section of the constitution requires that supreme and county courts shall be maintained, and that these courts shall be open for the trial of all causes proper for their cognizance. The closing paragraph of that section indicates the then present or prospective existence of inferior courts from whose judgment or sentence an appeal could be taken to the county court. The framers of the constitution understood that causes, both criminal and civil, would be made cognizable by justice and police courts, in which no provision would be made for the trial of causes by a common law jury, and in which courts the parties could not have that mode of trial. In order, therefore, to remove all doubt as to the right of the parties to a trial by a common law jury, and as to the court or courts in which that right is secured and may be enjoyed, Section 31 of the constitution provides that "trials of issues proper for the cognizance of a jury, in the supreme and county courts, shall be by jury, except where the parties otherwise agree." This section made it the duty of the legislature to provide for a jury of twelve men to try all issues, in the supreme and county courts, proper for their cognizance. And among the first acts of the legislature immediately ensuing the adoption of the constitution, are those creating supreme and county courts, with provision for trial by jury according to the rules of the common law. These courts have been maintained in every county in the state, and it is in them that a person accused of crime " hath a right to be heard by himself and his counsel, to demand the cause and nature of his accusation, to be confronted with the witnesses, to call for evidence in his favor, and a speedy public trial by an impartial jury of the country, without the unanimous consent of which jury he can not be found guilty." It is very clear we think

that the framers of the constitution intended to secure, and have secured, to the accused in all prosecutions for criminal offenses the right of trial by jury, and the constitution does not allow final jurisdiction of a criminal offense, proper for the cognizance of a jury, to be conferred upon a court in which the right of trial by a common law jury is not secured and allowed to the accused. The constitutional right of trial by jury is not made to depend upon legislation as to the jurisdiction of courts which do not try causes by jury according to the rules of the common law; nor upon the question whether the act complained of is a violation of a police regulation; nor upon the form of the charge, whether it be by indictment, information or upon complaint; nor upon the will of the prosecutor, as to the court in which the prosecution is commenced; nor upon the judgment of the justice or police court as to whether he will take cognizance of the offense; nor upon the amount of the fine or penalty; but the right is absolute, and it is secured to the accused because in all prosecutions for criminal offenses the *issue in fact*, therein to be tried, is eminently proper for the cognizance of a jury. The constitution says the right of trial by jury " ought to be held sacred." These are not mere sounding words, but they express the excellence of this mode of trial in the judgment of every American citizen, and the liberties of the people everywhere depend upon the sacredness in which this right is held.

In England the constitutional trial by jury was ever esteemed a privilege of the highest and most beneficial nature. In *magna charta* this mode of trial is insisted on as the principal bulwark of liberty. Judge Blackstone, commenting on trial by jury, says: " The liberties of England can not but subsist so long as this palladium remains sacred and inviolate, not only from all open attacks, (which none will be so hardy as to make,) but also from all secret machinations, which may sap and undermine it, by introducing new and arbitrary methods of trial by justices of the peace, commissioners of the revenue and courts of conscience." In many cases in England the statutes, authorizing a summary conviction before a magistrate, give an appeal to the sessions; and the party thus convicted has in general a right to a *certiorari* to

remove the conviction into the court of King's Bench, unless the right be expressly taken away by statute. Lord Kenyon said: " The *certiorari* being a beneficial writ for the subject, could not be taken away without express words, and he thought it was much to be lamented in a variety of cases that it was taken away at all." The English statutes have generally been construed in favor of the subject, allowing him the benefit of a trial in the higher courts, and by jury, unless such right was expressly denied by statute. Yet it is true that, in many cases under the English statutes, the proceedings in the higher courts, to which summary convictions are removed, fail to secure to the accused the benefit of trial by jury. It being a principle in the English law that an act of parliament, delivered in clear and intelligible terms, cannot be questioned, or its authority controlled in any court of justice ; the courts there can do no more than to give the statute a reasonable construction. We can, therefore, derive but little aid from English cases as to the constitutionality of a statute denying the right of trial by jury. We have adopted the common law of England only so far as it is applicable to our local situation and circumstances, and not repugnant to our constitution and laws ; therefore, neither the English statutes nor the practice there, which infringe the right of trial by jury in criminal causes, can have any weight in the construction of our constitution upon this subject. But the course of legislation in this state shows that the people never regarded the provisions for a trial by a jury of six men a compliance with the constitution ; and the practical construction given to the bill of rights, by the several acts relating to the right of appeal, has, (with the exception of the charter under consideration,) secured to the accused, in all criminal causes, the right of appeal, and consequently the right of trial by jury, without regard to the amount of the fine or penalty which, upon conviction, could or should be imposed or inflicted upon the convict. The first constitution of Vermont was adopted in 1777. The act of the legislature of 1786 empowered justices of the peace to try certain pleas and actions of a criminal nature, and limited their jurisdiction. It also provided that every person who should think himself aggrieved by the sentence of a justice in a criminal action, might, on

giving security, remove the cause by *certiorari* to the supreme court (where there was then a trial by jury,) there to be tried on the merits. The act of 1789 allowed an appeal from the judgment and sentence of a justice to the county court in all criminal causes. In the revision of 1797, the right of appeal was retained and given in all actions and prosecutions, both in civil and criminal causes, cognizable by a justice of the peace, excepting actions on notes of hand and settled accounts not exceeding seven dollars. The act of November, 1821, contained a proviso that no appeal should be allowed in any action brought on notes of hand and settled accounts, if such notes or settled accounts did not exceed twenty dollars. The 5th section of that act provided that the judgment of a justice of the peace should be final between the parties in all cases where the sum in demand did not exceed ten dollars; in which it was also provided that said section should not be construed to extend to any prosecution for a fine or penalty. The act of November, 1824, authorized a justice of the peace to try and determine all actions of trespass on the freehold, except real and possessory actions, where the sum in demand did not exceed twenty dollars, and gave the right of appeal in all such actions, without regard to the sum in demand.

Section 45 of chapter 26 of the Revised Statutes (1839) provides that an appeal from the judgment of a justice to the next stated term of the county court may be taken by either party. The 51st section of that chapter provides, among other things, that no appeal shall be allowed in actions on notes and accounts stated of an amount not exceeding twenty dollars; nor in actions where neither the *ad damnum* in the plaintiff's writ, nor the sum demanded by the declaration, nor the specifications or exhibits of the plaintiff on trial, shall exceed ten dollars; excepting actions for *fine or penalty*, actions of trespass on the freehold, and actions where the defendant pleads in offset any *bona fide* demand or demands exceeding the sum of ten dollars, and actions where the defendant, *bona fide*, pleads the authority of any court, civil or military, in excuse or justification, or where the defendant shall, *bona fide*, plead in excuse or justification that he was acting as a public officer, under or by virtue of any tax bill or mili-

tary warrant. And so the law has stood to the present time, with the exception of the charter in question. The provisions of the constitution of 1793, and the course of legislation in this state before and ever since that time, leave no doubt that the people have regarded all criminal causes as proper for the cognizance of a jury. The constitutional right of trial by jury does not depend upon legislation, but it is given by the organic law of the state, by the provisions of which it is made the duty of the legislature to create and provide courts in which the right may be enjoyed. As proof of that duty, we have shown, among other things, that the people of this state, by their constitution (article 10 of the bill of rights) have declared that in all prosecutions for criminal offenses, the accused hath a right to a speedy public trial by an impartial jury of the country; they have declared (by article 12 of the bill of rights) that when any issue in fact, proper for the cognizance of a jury, is joined in a court of law, the parties have a right to trial by jury "which ought to be held sacred;" they have declared by section 4 of the constitution that courts of justice shall. be maintained in every county in the state, which courts shall be open for the trial of causes.; and that they have declared (by section 31 of the constitution) that trials of issues proper for the cognizance of a jury, in the *supreme* and *county courts*, shall be by jury unless the parties otherwise agree. The word "*jury*," as used in the constitution, means a common law jury of twelve men. The constitution does not require the legislature to provide for trials of issues or causes, in justice or police courts, by jury; the legislature might in their discretion make provision for trial by a full jury in these inferior courts, and doubtless would do so, if the purposes for which they were created required it. But the constitution does require that the legislature shall either provide for a jury of twelve men for the trial of all causes before all courts which have jurisdiction of any matter or cause in which the issue in fact is proper for the cognizance of a jury, and in which the parties have a constitutional right of trial by jury, or allow the cause to be carried by appeal or otherwise to a court in which that mode of trial is provided for and may be enjoyed. And if a reasonably unfettered right of appeal to a court, where

a common law jury may be had, is provided for and granted, these constitutional provisions are not infringed. Whether the accused in a criminal prosecution could be deprived of such constitutional right and mode of trial, by reason of his inability to procure bail for the appeal to such court, is a question not necessary to consider in deciding this case. It seems to me that his inability to procure bail for the prosecution of the appeal should not deprive him of a trial by a full jury. I think provision should be made so that in case of inability of the appellant in a criminal prosecution to procure bail for the appeal, he might be committed for trial, in the appellate court, which could not operate as a greater hardship than if he had been arrested and committed, or bound over for trial in the county court, and could not procure bail, while it would secure the trial sought for by the appeal. As to this question the court express no opinion.

The charter of the city of Burlington, by conferring final jurisdiction in criminal causes upon a court before whom the constitutional right of trial by jury could not be enjoyed, has deprived the respondent of a right guaranteed to him by the constitution. No presumption can arise from the provisions of the charter that the legislature intended to take away the right of trial by jury in all prosecutions for criminal offenses within the jurisdiction of these inferior courts to try, for if such had been the intent of the act it would have been expressed.

Nor can any one suppose the legislature intended that persons accused of such offenses before a police court should be excepted from the enjoyment of a right which they could enjoy if prosecuted for the same offense before any other court in the city or county. The excellence of trial by jury in criminal causes can not be overestimated, for it is in such causes that the accused have the right to demand that the truth of every accusation, whether preferred in the shape of an indictment, information, or upon complaint, shall be confirmed by the unanimous suffrage of twelve men of his equals, indifferently chosen, and superior to all suspicion. In *Plimpton* v. *Somerset*, 33 Vt., 283, ALDIS, J., says: " The dangerous tendency of the principle of construction which would authorize the legislature to do away with jury trials in regard to rights founded upon statutes passed since the adoption of the con-

stitution, becomes more apparent when applied to statutes creating offenses not known to the common law. Such statutes, and the offenses which arise under them, are of frequent occurrence. But no one can suppose it a reasonable construction that persons accused of such offenses should be excepted from the enjoyment of this constitutional right."

The cases of *State* v. *Conlin*, *In re Ellen Dougherty*, and *State* v. *Freeman*, reported in the 27th Vermont Reports, are cited by the counsel. But it will be seen on examination of those cases that in neither of them was the respondent deprived of a trial by jury ; nor was the question as to the right of trial by jury ; nor as to the right of the legislature to confer final jurisdiction in criminal causes upon justice or police courts, in which the respondent can not have a trial by a jury of twelve men, presented by the exceptions. The *obiter dicta* in those cases in regard to conferring final jurisdiction in criminal causes upon a justice or police court, to try and decide such causes without the intervention of a jury, are not supported by authority ; nor by any approved mode of construction applicable to constitutional rights, and can not have the weight of authority. It will not be denied that the accused in a justice or police court is as clearly entitled to be held innocent until he is proved guilty, and found guilty by an impartial jury of the country, as when prosecuted in a court which tries causes by a jury of twelve men. In the cases where attempts are made to maintain the constitutional right of the legislature to confer final jurisdiction upon justice and police courts, to try and decide minor offenses without the intervention of a jury, the argument rests upon the fact that it would not be practicable or advisable in all cases to subject the proceedings in justice or police courts in such trials to the delay and expense which would inevitably result from trials in those courts by a common law jury. But, from these premises it does not follow that the legislature has power to deprive the accused of a constitutional right by conferring final jurisdiction upon a court in which such right can not be enjoyed ; for we have already shown that the constitution in express terms made it the duty of the legislature to create and maintain courts in which the constitutional right of

trial by jury may be enjoyed. In *Lincoln* v. *Smith*, 27 Vt., 328, BENNETT, J., speaking of the right of appeal from the judgment of the justice to the county court, says, "and in the county court the plaintiff would have been entitled to his trial by a jury of twelve men, and it is quite well settled that if a legislature pass an act giving to a justice of the peace power to hear and decide a cause without the intervention of a jury, but the act gives the right of appeal to a court which tries causes by a jury, it is no such violation of the right of trial by jury as to render the act unconstitutional, although had the judgment of the justice been final it might have been." The above quoted remarks of the learned Judge, though unnecessary to sustain the judgment rendered in that case, are supported by the authorities there cited. We think it is quite clear that the general words in the fifth article of the bill of rights, relating to the internal police of the state, are restrained in their application by the tenth and twelfth articles and the thirty-first section of the constitution, and the legislature has no power to confer final jurisdiction in criminal causes, proper for the cognizance of a jury, upon any court in which the accused can not have a trial by a jury of twelve men. From these views it follows that the provisions of the charter of the city of Burlington, which confer final jurisdiction of the criminal offense, charged in said complaint, upon the Recorder's court, by which provisions the respondent was denied the right of appeal, and also denied the right of trial by jury, are unconstitutional and void.

The other questions raised by the exceptions we shall dispose of very briefly. As to the rulings of the court below in regard to the testimony of Davis, Rhodes and Burritt, we find no error. In regard to the testimony of Drew, he testified that strong beer was intoxicating, but did not judge from his own experience. He was then inquired of by the prosecuting attorney: "Is strong beer reputed to be intoxicating?" This was clearly inadmissible. The witness had said in substance that he had no personal knowledge as to whether strong beer was intoxicating. The inquiry, which was objected to, did not call on the witness to state

whether he had personal knowledge of what he first stated, but the inquiry virtually concedes that the witness had no such knowledge, and calls for common report or mere hearsay as to whether strong beer is intoxicating, and the testimony should have been excluded.

The judgment of the Recorder's court is reversed, and the cause remanded.