STATE OF VERMONT *v.* JAMES CONLIN, *Apt.*

*Bill of rights.   Constitutionality and validity of proceedings under the twenty-second section of the act of* 1852, *to prevent traffic in intoxicating liquor.   Prosecution for selling liquor.   Former conviction.*

The tenth article of the bill of rights has reference to that class of criminal offences usually denominated "high crimes," the punishment of which affects life, liberty and reputation, and exposes the offender to infamous corporal suffering; and has no application to those minor offences which clearly concern the regulation of the internal police of the state.

The legislature may constitutionally provide that the minor offences punishable by fine only, or imprisonment in the county jail for a brief limited period, and having reference to the internal police of the state, may be tried, upon informal or merely oral complaints.

State *v*. Conlin.

The subject matter of the law of this state, relating to the traffic in intoxicating liquor comes within the regulation of the internal police of the state which is given, by the constitution, to the legislature.

Validity of certain proceedings under the 22d section of the act to prevent the traffic in intoxicating liquors for the purpose of drinking, considered and affirmed.

In a prosecution for selling intoxicating liquor contrary to law, to a plea in bar of a former conviction, it is a sufficient replication that neither of the offences, embraced in said conviction, is the offence for which the respondent is complained of in the present prosecution.

In such a prosecution a former conviction need not be specially plead; but it may be shown in evidence under the general issue.

PROSECUTION for selling intoxicating liquor contrary to law. The facts in the case and all the questions mooted in reference thereto sufficiently appear in the opinion of the court.

*R. R. Thrall*, for the respondent.

*M. G. Everts*, for the prosecution.

The opinion of the court was delivered by

REDFIELD, CH. J.   This was a prosecution before Charles L. Williams, Esq., one of the justices of the peace, for the county of Rutland, under the twenty-second section of the act of 1852, entitled " an act to prevent traffic in intoxicating liquors for the purpose of drinking." The record of the justice stated that Michael Brislin was found intoxicated and disturbing the public peace, and being arrested under the twenty-second section of this act, and brought before him, testified, " I drank some gin which I obtained at James Conlin's. I obtained a pint of him sometime yesterday, (Sunday, July 3,) for which I paid him a quarter of a dollar."

Thereupon the justice attached to said record his warrant to apprehend the respondent, and bring him before said justice " to answer the matters alleged against him in the foregoing testimony." The respondent put himself upon the court for trial and, the case being fully heard, was found guilty, and, it being shown that he had twice before been convicted of a similar offence, was fined $20 according to the statute, from which sentence and conviction he took an appeal to the county court, and there plead in bar a conviction as a common seller, before C. B. Harrington, Esq., and being sub-

jected to a fine of $100, under the same statute, during the pendency of this appeal. To this plea in bar, the counsel for the prosecution replied that neither of the offences of which the respondent was alleged in the plea to have been convicted before justice Harrington, was the same offence charged in these proceedings, to which the defendant's counsel demurred, and the county court adjudged the replication sufficient. The defendant, being allowed a trial on the general issue, was found guilty, by the jury, of the offence charged in the proceedings before justice Williams. On the trial before the jury, the defendant's counsel offered the record of the conviction before justice Harrington, which being objected to, was rejected by the county court, and the defendant took exceptions to this decision. The defendant also, in the county court, before pleading, moved to dismiss the proceedings, which motion was overruled and defendant excepted, and the case came into this court for the revision of these decisions.

The most important objection urged against the regularity of the proceedings, in the present case, is founded upon the informality of the accusation, and the argument rests chiefly upon the tenth article of the bill of rights in the constitution of this state. The bill of rights, in its present form, originated at a very early day. This article is found, precisely in its present form, in the first constitustitution of the state, adopted in 1777. This first constitution is understood to be almost a literal transcript from that of Pennsylvania, the original draught of which is attributed to Dr. Franklin. I have taken no pains to verify the tradition, nor is it of any moment here, except as it leads to the probable conjecture, that the several articles are aimed at abuses known either to the times, or to the history of earlier times. It is not easy to refer each article to the particular evil, intended to be guarded against. The second article, in regard to taking private property for public uses, is as old as the Roman civil law. Some articles are mere general abstractions, in the form of protests against tyrrany, civil and ecclesiastical, in the various forms, in which, in the history of the various political systems of some one or other of the European states, it has developed itself. And a considerable portion of the tenth article is copied, more or less literally, from *magna charta*. But it seems obvious to my mind, that this article is pointed against those forms

of tyranny exhibited in different tribunals, known to history, in different countries, by different names, not necessary to be repeated here.

It is well known that in many of these tribunals the accused was denied the benefit of counsel, (as indeed by the common law of England, until within a comparatively recent period;) that he was put upon trial for the sins of his whole life, with no specification whatever; the testimony was often taken in his absence, or, if present, he was not allowed to cross-examine the witnesses, or to produce witnesses in his own exculpation; that he was not allowed the benefit of a jury trial, and above all was compelled to give evidence against himself, under pain of torture. And many of the victims of this species of tyrrany, were kept in prison without trial till their limbs refused their accustomed office, and their hair became gray, or sometimes changed to stone. This tenth article of our bill of rights will be found a formal protest against these abuses, in detail. And if the legislature of this state should ever attempt to revive any of these abuses, of which there is small danger, no doubt it would be the duty of the courts of justice, to treat such enactments as absolutely void.

But when we know with positive certainty, that this declaration is aimed against abuses, in tribunals where the inevitable punishments were incarceration for life, perpetual banishment under pain of death, and death itself by all the ingenious devices of torture known to the most despotic forms of human government, in the most barbarous times, it seems idle, not to say more, to attempt to apply it to offences so utterly insignificant, as the present, comparatively speaking, must be regarded in its consequences to the accused certainly, and when the offence here so obviously concerns the regulation of the internal police of the state, the exclusive control of which is, in express terms, given to the legislature, in the fifth article of this same bill of rights, in the following very explicit terms : " that the people of this state, by their legal representatives " have the sole, inherent and exclusive right of governing and reg- " ulating the internal police of the same."

I must say, after the most patient and thorough examination, that I can entertain no doubt whatever, that this tenth article of the bill of rights, could only have had reference to that class of

criminal offences usually denominated high crimes, the punishment of which affects life, liberty and reputation, and exposes the offender to infamous corporal suffering, at the least; and that it has not and was not intended to have, any application to those minor offences, which chiefly concern the regulation of the internal police of the state, and which, for all practical purposes, would be effectually paralyzed, by subjecting the proceedings, in all cases to the cumbrous detail and heavy machinery of trial by jury of twelve men, to which the article undoubtedly refers. And it is vain to affect to believe, that the framers of this article did not comprehend how trials in the police courts of the cities and towns of this country and England, had for centuries been conducted, where all the proceedings are *ore tenus*, until the conviction, which is all that appears of record.

And if the constitution in this article had intended to change all this, as similar provisions exist, in most of the constitutions of the other states, and in that of the United States, dating from nearly the same period, it is amazing that the old practice should have still continued without remonstrance, in regard to the trial of these minor offences. And it is equally incomprehensible, how the same practice, in police courts should always have obtained, in England, without question, when it is well known, that most of this tenth article, is equally a part of the English constitution, and has been since the date of *magna charta*, a large portion of which is literally copied from that charter.

And whatever may be thought of the wisdom, or policy of these laws, and I make no question, that is a subject upon which men have not only the right, but reason also, for difference of opinion; it is idle to affect to persuade ourselves that the subject matter does not come fairly within the regulation of the internal police of the state, which is by the constitution, in express terms, secured, to the regulation and control of the legislature, or to disregard the practical construction, which this provision has received since its adoption into the American constitutions, and for centuries before in the jurisprudence of England. This practical construction is of the most controlling force, both before and since its adoption into our state constitution; the one showing in what sense, it was understood by the framers of the constitution itself, and the other equally

confirming this former construction, by the general consent and acquiescence of the people, both of which are always regarded, as of paramount weight in the exposition of constitutional law, and which we do not feel at liberty to disregard.

If the legislature see fit to provide, that the minor offences punishable with fine only, or imprisonment in the county jail, for a brief and limited period, and having reference to the internal police of the state, may be tried upon such complaint, as these proceedings show, or upon a merely oral complaint, made in court or by a jury of six men, or no jury at all, we have no doubt whatever of their perfect right to do so. And it is not easy for us to comprehend, why this complaint is any less available, for all practical purposes, to the accused, than a formal indictment. For since this court have decided that in indictments for selling liquor contrary to law, it is not necessary to allege to whom the sale was made, and especially since the decision, that the form of indictment given in the statute of 1852 is sufficient, where the only descriptive averments of the offence are, that the accused " did at divers times, sell, furnish, or give away intoxicating liquor," inasmuch as the accused is always entitled to a specification, and time to prepare his defence; after all this, upon the fullest consideration, has been determined, in regard to the forms of indictment, it seems like hypercriticism, to object to the substance of this accusation. It is so certain that it does not admit of being more specifically described; one who should ask for a specification, under such a charge, to enable him to know of what he was accused, and to prepare his defence, would be regarded as in jest. The only possible objection, which the ingenuity of counsel has been able to raise is, that the place of the sale is not stated, which the statute does in terms, require. But, as the proceedings are in the margin, entitled of Rutland county, and by the general rules of pleading, all facts, alleged without place, are referred to the county in the margin, and this brings the case within the jurisdiction of the court; we do not regard the omission as fatal, although it is a departure from the statute, which should not be encouraged, in practice. But particularly this omission could not lead to embarassment, unless the accused had two or more places of making such sales. But I can comprehend, that any one, looking at this subject, from a merely professional point of view, should

regard the accusation, as essentially defective. It contains none of the negative averments of want of license, and none of the mere formal averments of the offence being committed, against the statute, and against the peace, or with force and arms, &c. But I should myself question, whether the tenth article ever had any refence to these merely formal averments; much less that they are of any indispensable necessity, in proceedings of the character before us.

The other objections we shall dispose of very briefly:

1. It is said that the statute makes the court the prosecutor. But we do not think this is the fair construction of the statute. The justice does in all criminal cases, where a complaint is made before him, have to judge of the sufficiency of the complaint, to justify the issuing of a warrant. And nothing more is required here.

2. It it said the statute requires the justice to adjudge the testimony sufficient to show an offence against the statute, before issuing his warrant and this does not appear to have been done, and

3. That this very decision is a virtual conviction of the accused *ex parte*, and before arrest, which two objections seem to answer each other. We think that the statute requires nothing more than to give to the justice a discretion to issue his warrant only, when the testimony of the person found intoxicated, shall show, that he obtained his liquor, under circumstances which unexplained and uncontradicted would amount to an offence. And this is equally true of all informations and indictments. We think the justice adopted the true view of the subject, in making no such formal judgment upon the testimony, which would indeed have exposed the proceedings to the apparent incongruity, attempted to be charged against them.

4. We do not regard it as necessary, in proceedings of this character, to plead a former conviction, especially, since no formal complaint is required. But being plead specially, the replication was clearly a sufficient answer. And when the defendant was allowed to plead over the general issue of not guilty to the charge, he should if he chose, have been allowed to go into evidence, to show that he was convicted of this same offence, before justice Harrington.

And if testimony of this offence were given upon that trial, which was submitted to the triers, it should be regarded as a conviction of the same offence.

Exceptions overruled, except as to the evidence offered of the former conviction, and case remanded for new trial upon that plea.